## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LEZMOND CHARLES MITCHELL** | ) | |
| **Register Number 48685-008** | ) | |
| **U.S. Penitentiary Terre Haute** | ) | |
| **Terre Haute, IN 47802** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:20-CV02331-RCL** |
| | ) | |
| **WILLIAM P. BARR** | ) | **CAPITAL CASE** |
| **Attorney General** | ) | |
| **U.S. Department of Justice** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **JEFFREY A. ROSEN** | ) | |
| **Deputy Attorney General** | ) | |
| **U.S. Department of Justice** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **ROSALIND SARGENT-BURNS** | ) | |
| **Acting Pardon Attorney** | ) | |
| **Office of the Pardon Attorney** | ) | |
| **950 Pennsylvania Avenue, NW** | ) | |
| **Washington, DC 20530;** | ) | |
| | ) | |
| **MICHAEL CARVAJAL** | ) | |
| **Director** | ) | |
| **Federal Bureau of Prisons** | ) | |
| **U.S. Department of Justice** | ) | |
| **320 First St., NW** | ) | |
| **Washington, DC 20534;** | ) | |
| | ) | |
| **JEFFREY E. KRUEGER** | ) | |
| **Regional Director** | ) | |
| **Federal Bureau of Prisons** | ) | |
| **North Central Region** | ) | |
| **U.S. Department of Justice** | ) | |
| **400 State Avenue, Suite 800** | ) | |
| **Kansas City, KS 66101;** | ) | |

**and** )
)
**T.J. WATSON** )
**Complex Warden** )
**U.S. Penitentiary Terre Haute** )
**4700 Bureau Road South** )
**Terre Haute, IN 47802,** )
)
**In their official capacities; and,** )
)
**U.S. Department of Justice** )
**950 Pennsylvania Avenue, NW** )
**Washington, DC 20530** )
)
**Federal Bureau of Prisons** )
**U.S. Department of Justice** )
**320 First St., NW** )
**Washington, DC 20534** )
)
**Office of the Pardon Attorney** )
**950 Pennsylvania Avenue, NW** )
**Washington, DC 20530;** )
)
**Defendants.** )

## DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Lezmond Charles Mitchell, an inmate at the U.S. Penitentiary (USP), Terre Haute, appears before this Court on the eve of his execution after having been convicted and sentenced to death for the 2001 carjacking, torture, murder, and dismemberment of a grandmother and her nine-year-old granddaughter. In the nearly two decades of ensuing litigation, his conviction and sentence have been consistently upheld by every court to review them.

Mitchell's eleventh-hour lawsuit alleges that the defendants deliberately interfered with the clemency process by providing him 28 days' notice of his rescheduled execution date—more notice, he concedes, than the applicable regulations specify. (Dkt. 1-11 at 13.) Admitting that the Office of the Pardon Attorney has already completed its investigation and the Department of

2

Justice has provided its recommendation to the President, Mitchell nevertheless claims that the defendants have violated his rights under the Fifth and Eighth Amendments of the United States Constitution by "preventing the President from exercising his constitutional authority." (Dkt. 1¶¶32, 64, 74.)  Mitchell's motion for injunctive relief should be denied.

Courts should apply a strong equitable presumption against enjoining an execution when the prisoner's argument could have been raised earlier without requiring such relief.  Here, Mitchell received notice of his new execution date in late July and unsuccessfully raised and litigated the clemency issue underpinning his request for injunctive relief almost a month ago in the course of Ninth Circuit proceedings that were then pending.  Mitchell also filed a series of requests for stays of execution in Arizona, all of which have been unanimously and promptly rejected.  Having been denied relief there, Mitchell waited until the day before his execution to file this action, with no explanation for the delay.  The strong equitable presumption against a stay under these circumstances calls for the denial of his motion.

Additionally, a court cannot halt an execution absent a showing of likely success on the merits.  Mitchell's motion fails to demonstrate likely merits success for multiple reasons.  First, Mitchell's claim is moot the defendants have already performed the action he seeks to compel by processing his clemency petition in the normal course and transmitting a recommendation to the President.  The pardon attorney, moreover, conducted an undeniably thorough process, which included an in-person presentation from Mitchell's counsel and members of the Navajo Nation. And Mitchell had a full 30 days in which to prepare his initial pardon application after he received his first execution date in 2019.  The tribal-sovereignty issues and other matters Mitchell discusses were thoroughly presented and carefully considered.  It is not clear what more process he wants or

could receive, and it is his burden to make that showing.  Furthermore, the pardon regulations do not grant Mitchell the timing rights he is now claiming.

Second, especially given that posture, Mitchell's motion amounts to a request that the Court issue an order improperly intruding into the President's exclusively executive pardon power, by compelling the President to announce a decision on his clemency petition and by second-guessing how the Department of Justice formulates its recommendation to him about clemency.  If the President requires additional time to consider Mitchell's clemency application, he can delay the execution for that reason.  Mitchell's request is ungrounded in law or fact, and fails to show the kind of probable success necessary to enjoin his execution.

Lastly, the equities cut substantially against Mitchell, who perpetrated gruesome crimes against vulnerable victims and who has enjoyed nearly two decades in which to litigate, including more than a year since his execution was originally noticed, and almost a month since the Ninth Circuit denied equitable relief Mitchell requested based on the same clemency theory.  The strong interests of the United States, the public, the victims, and victim family members substantially outweigh whatever interest Mitchell has in litigating such untimely and groundless arguments.

## BACKGROUND

### I.   FACTUAL AND PROCEDURAL HISTORY

1.     In 2001, Mitchell and an accomplice killed and dismembered a 63-year-old woman, Alyce Slim, and her nine-year-old granddaughter, identified in court documents as Jane Doe, during a carjacking.  *United States v. Mitchell*, 502 F.3d 931, 942-43 (9th Cir. 2007) ("*Mitchell I*").  Mitchell and his accomplice, 16-year-old Johnny Orsinger, were traveling from Arizona to New Mexico in search of a vehicle to use as part of a plan to rob a trading post on the Arizona side of the Navajo Indian Reservation.  *Id*. at 942.  While hitchhiking, they encountered Slim, who was

driving in her pick-up truck with Doe.  *Id*. at 942-943.  Slim and Doe agreed to give Mitchell and Orsinger a ride, and drove the two men to a location near Sawmill, Arizona.  *Id*. at 943.

When Slim stopped to let Mitchell and Orsinger out, the men stabbed her 33 times.  *Id*. After killing Slim, they pulled her body into the backseat, next to her still-alive granddaughter, and drove into the mountains.  *Id*.  Mitchell stopped the truck, dragged Slim's body out of it, and ordered Doe to get out as well.  *Id*.  Mitchell then told Doe "to lay down and die" and cut her throat twice.  When Doe did not immediately die, the men used large rocks to bludgeon her head until they had killed her.  *Id*.  Orsinger then used an axe to decapitate the victims and cut off their hands while Mitchell dug a hole, and the men buried the severed body parts in the hole and pulled the victims' torsos into the woods.  *Id*.  Later, the men burned Slim's and Doe's belongings.  *Id*.  Both murders occurred on the Navajo Indian Reservation.  *Id*. at 943, 946.  Slim and Doe were Navajo, and Mitchell is also Navajo.  See *id*. at 958, 971, 989.

A few days later, Mitchell and two other associates drove Slim's truck to the trading post, and robbed the store and its employees at gunpoint, stealing over $5,000.  *Id*. at 943-944. Afterward, Mitchell and his associates split the proceeds, and Mitchell set fire to Slim's truck.  *Id*. at 944.

Law enforcement officers arrested Mitchell at an accomplice's house a week after the murders.  *Id*.  They found a butterfly knife in his pants with trace amounts of Slim's blood on it, as well as another butterfly knife and Slim's cell phone.  *Id*.  Mitchell waived his Miranda rights and admitted that he had been involved in the trading-post robbery and that he was present when "things happened" to Slim and Doe.  *Id*.  The next day, Mitchell helped Navajo police officers locate the bodies of Slim and Doe and, at the scene, admitted that he had stabbed the "old lady" and stated that evidence would show or witnesses would say that he had cut Doe's throat twice.

5

*Id*. at 944-45.  Mitchell also confessed that the men had dropped rocks on Doe's head after cutting her throat and that they had severed and buried the victims' heads and hands.  *Id*. at 945.  Before he was arraigned on federal charges, Mitchell again waived his Miranda rights and admitted his role in the robbery and killings, this time providing more detail.  *Id*.

2.      A federal grand jury in the District of Arizona returned an 11-count indictment charging Mitchell with two counts of first-degree murder, in violation of 18 U.S.C. §§ 1111 and 1153; one count of carjacking resulting in death, in violation of 18 U.S.C. § 2119; one count of felony murder (robbery), in violation of 18 U.S.C. §§ 1111 and 1153 and 18 U.S.C. § 2111; one count of felony murder (kidnapping), in violation of 18 U.S.C. §§ 1111 and 1153 and 18 U.S.C. § 1201(a)(2); one count of kidnapping, in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 1201(a)(2); three counts of robbery, in violation of 18 U.S.C. § 1153 and 18 U.S.C. § 2111; and two counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  502 F.3d at 945.  The government filed a notice of intent to seek the death penalty on the carjacking-resulting-in-death count.  See 18 U.S.C. § 2119(3).  Mitchell was convicted at trial and received a capital sentence, which was affirmed by the Ninth Circuit.  *Id*. at 931-97, and the Supreme Court denied a petition for a writ of certiorari.  553 U.S. 1094 (2008).

3.      Mitchell subsequently brought a collateral attack on his conviction and sentence in a motion under 28 U.S.C. 2255 to vacate, set aside, or correct his sentence.  The district court denied relief, and the judgment was affirmed on appeal.  See *Mitchell II*, 790 F.3d at 886-94 & n.7.  The Supreme Court denied a petition for a writ of certiorari.  137 S. Ct. 38 (2016).

4.      On March 5, 2018, Mitchell filed a motion under Federal Rule of Civil Procedure 60(b)(6), seeking to reopen the judgment in his Section 2255 proceeding based on the Supreme Court's decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017).  See Fed. R. Civ. P. 60(b)(6).  The

district court rejected Mitchell's contention that *Peña-Rodriguez* entitled him to reopen the collateral proceedings in his case. *Mitchell v. United States*, 2018 WL 4467897, at *4 (D. Ariz. Sept. 18, 2018).

The Ninth Circuit granted a certificate of appealability (COA) to review the district court's denial of the Rule 60(b)(6) motion. Order, No. 18-17031 (9th Cir. Apr. 25, 2019), Dkt. No. 10-1. Meanwhile, on July 25, 2019, the Federal Bureau of Prisons scheduled Mitchell's execution to occur in December 2019. On August 30, 2019, Mitchell filed a petition for clemency with the Office of the Pardon Attorney. The Ninth Circuit subsequently stayed Mitchell's execution on October 4, 2019, pending resolution of the appeal. Order, No. 18-17031 (9th Cir. Oct. 4, 2019), Dkt. No. 26. As a result, the Office of the Pardon Attorney administratively closed Mitchell's clemency petition, subject to refiling upon the rescheduling of his execution. After briefing and argument, the Ninth Circuit unanimously affirmed the district court's decision not to reopen Mitchell's collateral proceedings. *See Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020).

The court entered judgment on April 30, 2020. On July 8, 2020, the court denied Mitchell's petition for rehearing and rehearing en banc, and on July 15, 2020, the court further denied Mitchell's motion to stay the issuance of the mandate pending the filing and disposition of a petition for a writ of certiorari. *See* Order, No. 18-17031 (9th Cir. July 8, 2020), Dkt. No. 39; Order, No. 18-17031 (9th Cir. July 15, 2020), Dkt. No. 45. Five days later—and two days before the mandate was scheduled to issue—Mitchell filed a second rehearing petition, seeking further review of the denial of his motion to stay the issuance of the mandate. *See* Petition for Rehearing/Rehearing En Banc, No. 18-17031 (9th Cir. July 20, 2020), Dkt. No. 46; *see also* Fed. R. App. P. 41(b).

On July 29, 2020, the government rescheduled Mitchell's execution for August 26, 2020, and notified Mitchell, the district court, and the Ninth Circuit of that event.  *See* Gov't Letter to Clerk, No. 18-17031 (9th Cir. July 29, 2020), Dkt. No. 47.  The government represented that the Federal Bureau of Prisons would not execute Mitchell as long as the Ninth Circuit's stay remained in place.  *Id*.

The next day, Mitchell filed a "Motion to Enforce Stay of Execution and to Strike the August 26 Execution Date" claiming, among other things, that the August 26 execution date left only nine days for the Office of the Pardon Attorney to process his clemency application, which he could not file while the Ninth Circuit case remained pending.  *See* Mot., No. 18-17031 (9th Cir. July 30, 2020), Dkt. 48 at 12-13.  The government's response noted that, as to Mitchell's clemency argument, "[n]othing prevents Mitchell from now submitting any additional materials he wishes, and rescheduling his execution does not impede the Office of the Pardon Attorney from processing the matter or preparing a recommendation. Indeed, [the USAO] has been informed that the Office of the Pardon Attorney is doing so."  Resp., No. 18-17031 (9th Cir. Aug. 3, 2020), Dkt. 49 at 16.

In reply, Mitchell stated that he had refiled his clemency application on July 31, 2020.  Repl., No. 18-17031 (9th Cir. Aug. 5, 2020), Dkt. 50 at 6.  Although Mitchell had received confirmation that the Office of the Pardon Attorney was processing his application, he asserted "a good faith basis for believing that the Government's August 26, 2020 execution date will prevent OPA from issuing a final decision on [his] petition" and "included a new form of relief in his reply," requesting that the Ninth Circuit stay issuance of the mandate until the clemency petition was decided.  *Id*. at 10-14.  The Ninth Circuit permitted the government to file a sur-reply, which affirmed that "the Office of the Pardon Attorney had . . . confirmed to the U.S. Attorney's Office that it is processing Mitchell's application and that the rescheduling of his execution does not

impede its preparing a recommendation."  Sur-Repl., No. 18-17031 (9th Cir. Aug. 6, 2020), Dkt. 51-1 at 2.  Further, the government argued, the Court had no authority to maintain a judicial injunction against execution until Mitchell's clemency petition was decided, because "[c]lemency is an exclusively executive function, committed to the sole discretion of the President of the United States." *Id.* at 3 (citing U.S. Const. art. II, § 2, cl. 1; *Harbison v. Bell*, 556 U.S. 180, 187 (2009)).

On August 11, 2020, the Ninth Circuit denied Mitchell's second rehearing petition and motion to enforce the stay of execution, *see* Order, No. 18-17031 (9th Cir. Aug. 11, 2020), Dkt. No. 52.  On August 13, 2020, Mitchell filed petition for a writ of certiorari, *see* Docket No. 20-5398 (Sup. Ct.) (docketed Aug. 18, 2020).  The Ninth Circuit's mandate issued on August 18, 2020 and the following day, Mitchell filed an application to the Supreme Court for a stay of his execution pending the disposition of his petition for a writ of certiorari.  *See* Docket No. 20A30 (Sup. Ct.). At this time, Mitchell's petition and motion remain pending before the Supreme Court.

5.    Separately, on August 6, 2020, Mitchell filed in his original criminal proceeding in the United States District Court for the District of Arizona a challenge to the manner in which his execution will be carried out—premised principally on the theory that the judgment in his case and the Federal Death Penalty Act ("FDPA") require the federal government to adhere to certain lethal-injection protocols used by the State of Arizona.. *See* Plf.'s Emergent Motion to Strike Execution Warrant, United States v. Mitchell, No. 01-cr-1062 (D. Ariz. Aug. 6, 2020), ECF No. 606.  After a hearing, the district court declined to stay Mitchell's execution or grant any other relief on the basis of that challenge.  *United States v. Mitchell*, No. CR-01-01062, 2020 WL 4698056 (D. Ariz. Aug. 13, 2020).

On August 18, 2020, the Ninth Circuit heard oral argument on Mitchell's emergency motion to stay his execution pending appeal from the district court's order.  On August 19, 20202,

the Ninth Circuit denied Mitchell's request for a stay, explaining that it was "not persuaded by Mitchell's arguments," noting that the BOP's protocol and the Arizona provisions Mitchell relied upon are "largely indistinguishable," and concluding that Mitchell "ha[d] not carried his burden of demonstrating a likelihood of success on the merits or that it is probable that he will suffer irreparable harm."  *United States v. Mitchell*, --- F.3d ----, 2020 WL 4815961, at *4-5 (9th Cir. Aug. 19, 2020).  The Ninth Circuit denied en banc review, and Mitchell filed an application for a stay of execution in the Supreme Court on August 23, 2020, which also remains pending before the Court, see Docket No. 20A32 (Sup. Ct.).

6.     Most recently, in the evening of August 20, 2020, Mitchell filed a second Section 2255 motion collaterally attacking his conviction and sentence, and an accompanying stay.  Mitchell contended that pursuant to a recommendation issued by the Inter-American Commission on Human Rights ("Commission"), which had concluded that Mitchell's death sentence violated the American Declaration of the Rights and Duties of Man, and under the Charter of the Organization of American States, Mitchell's death sentence must be invalidated and that he must be given a new trial.  *See generally* Motion to Vacate Sentence, *Mitchell v. United States*, No. 20-cv-8217 (D. Ariz. Aug. 20, 2020), ECF No. 1.  The district court denied Mitchell's motion and request to stay his execution, noting that Mitchell's "fairly radical" argument would require United States to "surrendered the power of its courts to the IACHR," and concluding that Mitchell "ha[d] not come close to showing that decisions of the IACHR are binding in U.S. courts."  *Mitchell v. United States*, No. 20-cv-8217, 2020 WL 4921988 (D. Ariz. Aug. 21, 2020); see also Amended Order, No. 20-cv-8217, ECF No. 11 (Aug. 22, 2020).  The court also denied a COA.

Mitchell sought a COA from the Ninth Circuit and an emergency stay, both of which the court denied on August 23, 2020.  As that court held, "reasonable jurists would not find debatable

the district court's conclusion that the IACHR's decision is not binding in federal court," and "'every federal court of appeals that has addressed this issue has concluded that IACHR decisions do not have domestic legal force.'" *Mitchell v. United States*, No. 20-99010, slip. op. at 4-5 (9th Cir. Aug. 23, 2020), Dkt. No. 6-1 (quoting district court opinion).

## II.      MITCHELL'S CLEMENCY PETITION

On July 25, 2019, the United States delivered to Mitchell notice of its intent to carry out his sentence pursuant to federal regulations. *See* Dkt. 84-1, *Lezmond Mitchell v. United States*, No. 09-cv-08089-DGC (D. Ariz.). His original execution date was scheduled for December 11, 2019. (*Id.*) The December execution was eventually stayed by the Ninth Circuit on October 4, 2019, pending resolution of an appeal of the denial of a Rule 60(b) motion.

Before the execution was stayed, Mitchell's counsel prepared a formal petition for commutation of his death sentence pursuant to 28 C.F.R. § 1.10, which was filed August 30, 2019. Dkt. 1¶18. Mitchell timely filed supplemental materials in support of that clemency petition. *Id.* On October 7, 2019, the Office of the Pardon Attorney informed Mitchell that, in light of the Ninth Circuit's order staying his execution, it was administratively closing Mitchell's clemency petition without prejudice. Dkt. 1¶19.

Mitchell re-filed his clemency petition on July 31, 2020, after his execution was rescheduled for August 26, 2020. Dkt. 1¶24. Although Mitchell initially found it "unclear whether . . . OPA would accept Mitchell's clemency petition . . . while litigation was still pending in the Ninth Circuit," Dkt. 1¶23, as described above, he had admitted in the Ninth Circuit by August 5, 2020, that he knew OPA was processing his application. Repl., No. 18-17031 (9th Cir. Aug. 5, 2020), Dkt. 50 at 10-14.

Mitchell made his oral presentation to OPA on August 11, 2020. Dkt. 1¶¶24-25.  Mitchell describes the "primary thrust" of his clemency petition as being "that his death sentence is an affront to the sovereignty of the Navajo Nation." Dkt. 1¶27.  He admits that Navajo Nation President Jonathan Nez joined his oral presentation to OPA "to reiterate the Navajo Nation's request for a life sentence for Mitchell," Dkt. 1¶28, and attaches numerous letters submitted to the President on his behalf.  Dkt. 1 at 283-91.  Mitchell does not identify, and has not identified, any materials he was unable to submit.

## STANDARD OF REVIEW

"A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926).  Rather, "a stay of execution is an equitable remedy," and "equity must be sensitive to the" government's "important interest in the timely enforcement of a sentence."[1] *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  Thus, the Supreme Court emphasized just last month that last-minute stays of execution "should

---

[1]     Labels aside, Mitchell in substance seeks an injunction barring his execution absent compliance with what he asserts are certain clemency-related requirements, not a "stay" of his capital sentence.  "[A] stay operates upon the judicial proceeding itself … by temporarily divesting an order of enforceability," with "[t]he whole idea" being "to hold the matter under review in abeyance" given lack of time "to decide the merits." *Nken*, 556 U.S. 418, 428, 432 (2009) (emphasis added).  But here, the "matter under review" is emphatically not Mitchell's lawfully imposed sentence, and an order temporarily setting it aside—as a stay in this posture would do—is beyond this Court's authority in this non-habeas challenge.  *See Hill v. McDonough*, 547 U.S. 573, 580 (2006) (permitting challenge to execution method outside habeas only where there was no "challenge to the fact of the sentence itself").  Rather, Mitchell asserts that the government is required to comply with certain procedures regarding clemency petitions, which could at most support an order precluding federal officials from carrying out his sentence absent compliance with those procedures.  That is an injunction—an "in personam" order "directed at someone, and govern[ing] that party's conduct." *Nken*, 556 U.S. at 428 (emphasis omitted); *see also Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (per curiam) (distinguishing stays from injunctions).

be the extreme exception, not the norm." *Barr v. Lee*, No. 20A8, 2020 WL 3964985, at *2 (U.S. July 14, 2020) (quoting *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019)).

To obtain a stay of execution, an inmate "must demonstrate (1) that he is likely to succeed on the merits of such a claim, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The same factors guide the issuance of a preliminary injunction. *See id.* The burdens of proof and persuasion are on the inmate seeking injunctive relief, not on the government, and the inmate must carry that burden "by a clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

## ARGUMENT

## I.   MITCHELL'S ELEVENTH-HOUR MOTION MUST BE DENIED BECAUSE HE DELAYED TOO LONG

Because "a stay of execution is an equitable remedy," any "court considering a stay must . . . apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (*quoting Nelson v. Campbell*, 541 U.S. 637, 650 (2004)). Indeed, "before granting a stay [of execution], a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the inmate has delayed unnecessarily in bringing the claim." *Nelson*, 541 U.S. at 649-50.

The Supreme Court has specifically criticized suits that are "dilatory or speculative" or that seek to employ "[r]epetitive or piecemeal litigation" to delay the carrying out of capital sentences. *Hill*, 547 U.S. at 584-85. Thus, courts also "must take into consideration" an inmate's "attempt at manipulation" and "the last-minute nature of an application to stay execution in deciding whether

to grant equitable relief." *Gomez v. U.S. Dist. Ct. for N. Dist. of California*, 503 U.S. 653, 654 (1992).

Here, there is no reason Mitchell could not have brought this action a month ago, when he received notice of his rescheduled execution date.  Mitchell was well aware of the issue by then, choosing to argue in the Ninth Circuit on July 30, 2020, that his execution date would not give the Office of the Pardon Attorney enough time to consider his clemency application. *Mitchell v. United States*, Ninth Cir. No. 18-17031, Dkt. 48 at 2 (July 30, 2020).  After filing his clemency application the following day, Mitchell asked the Ninth Circuit to "stay its mandate until [his] clemency petition is decided." *Id.*, Dkt. 50 at 8 (Aug. 3, 2020).  Yet Mitchell waited *two weeks* after the Ninth Circuit denied this near-identical request, *id*, Dkt. 52 (9th Cir. Aug. 11, 2020), to file his claim in this Court.

In that two-week time period, Mitchell serially filed for, and was denied, four separate stays.  *See United States v. Mitchell*, No. CR-01-01062-001-PCT-DGC, Dkt. 618 (D. Ariz. Aug. 13, 2020) (denying stay of execution requested in connection with challenge to lethal injection protocol); *United States v. Mitchell*, No. 20-99009, Dkt. 18-11 (9th Cir. Aug. 16, 2020) (same); *Mitchell v. United States*, No. CV 20-8217-PCT-DGC, Dkt. 11 (D. Ariz. Aug. 22, 2020) (denying stay of execution requested in connection with new claim under 28 U.S.C. § 2255); *Mitchell v. United States*, No. 20-99010, Dkt. 7 (9th Cir. Aug. 23, 2020) (denying stay requested in connection with motion for COA). This is the definition of repetitive, piecemeal litigation that the Supreme Court has cautioned against countenancing. *Hill*, 547 U.S. at 584-85.

Mitchell does not even attempt to articulate valid reasons for his delay. But the case of Daniel Lee, a death-row inmate who mounted a similar clemency challenge in this Court before being executed last month, demonstrates that Mitchell could have brought his claim sooner.  Lee,

like Mitchell, originally was notified of a December 2019 execution date in July 2019. *See Lee v. Barr, et. al.*, No. 19-cv-03611-TSC, Dkt. 17¶15 (Feb. 12, 2020).  He filed his clemency-based complaint in this Court on December 2, 2019, despite his execution being stayed at the time.  *Id.*, Dkt. 1 (Dec. 2, 2019).  Lee continued to pursue his legal claim even after he had withdrawn his clemency petition, on the theory that he anticipated filing a new clemency application when a new execution date was scheduled.  *Id.*, Dkt. 20 at 3 (Mar. 11, 2020).  Seven days after his execution was rescheduled, and 21 days before the execution was set to occur, Lee filed for a preliminary injunction. *Id.*, Dkt. 24-1 at 2 (Jun. 22, 2020).  He specifically noted he was "seek[ing] injunctive relief from this Court while he simultaneously pursue[d] clemency relief." *Id.* at 4.  Mitchell could have done the same, by last month at the latest. Having failed to do so, the delay weighs sharply against him.

 If parties could do what Mitchell has done here—obtain a stay to litigate one issue, lose, wait for the execution to be rescheduled, and only then raise the next issue, and then the next issue, seek further stays with each new claim—then last-minute stays would be the "norm," not the "extreme exception" the Supreme Court requires.  *Lee*, 2020 WL 3964985, at *2; *Bucklew*, 139 S. Ct. at 1134.  Because Mitchell has "delayed unnecessarily in bringing the claim," *Nelson*, 541 U.S. at 649-50, which "could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay," *Hill*, 547 U.S. at 584, his motion should be denied.

## II.    MITCHELL FAILS TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS

This Court must deny Mitchell's request for relief because he cannot demonstrate "a substantial likelihood of success on the merits" of his claim—"a key" and "often … dispositive" issue for in requests for preliminary equitable relief, *Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 639 F.3d 1078, 1083 (D.C. Cir. 2011).  Indeed, the Supreme

Court has made it clear that courts may not stay executions absent a finding of a likelihood of success on the merits.  *See Dunn v. McNabb*, 138 S. Ct. 369 (2017) (summarily vacating district court injunction unsupported by a likelihood of success on the merits).

"[I]nmates seeking time to challenge the manner in which the [government] plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits."  *Hill*, 547 U.S. at 584.  For many reasons, Mitchell fails to meet his burden to show a substantial likelihood of success on the merits.

*First*, his claim is moot: his lawsuit seeks to enjoin the actions of Department of Justice (DOJ) officials and employees who have already provided their clemency recommendation to the President after full and fair consideration in the normal course.  *Second*, pardon power is exclusively the province of the President, as conveyed to him under art. II, § 2, cl. 1 of the Constitution.  Federal regulations outlining the internal process DOJ employees follow in advising the President do not confer on Mitchell any due process or other rights, and nor does the FAQs section of the website on which Mitchell necessarily bases his claim.  Further, for this Court to direct the President's pardon power through injunctive relief raises significant separation-of-powers concerns.  *Third*, Mitchell's assertion that he maintains Fifth Amendment due process or Eighth Amendment rights beyond the "minimal procedural safeguards" described in Justice O'Connor's concurring opinion in *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998) are belied both by the holding of the case and the facts here, which show that Mitchell's clemency petition received consideration in the ordinary course, and far more than the arbitrary "coin flip" Justice O'Connor visualized.

1. <u>Mitchell's Claim is Moot</u>

As defendants, Mitchell exclusively names DOJ officials and employees he describes as playing some role in the pardon process. Dkt. 1¶¶2-13. But, as described both in Mitchell's complaint and the attached declaration of Kira Gillespie, the Department of Justice has completed its role in the pardon process and provided its recommendation to the President. Dkt. 1¶32; Decl. of Kira Gillespie ¶5. Mitchell does not, and cannot, point to any internal regulations that he alleges DOJ violated. *See* 28 C.F.R. § 1.1-1.10. Indeed, although it is not the defendants' burden to do so, Ms. Gillespie's Declaration demonstrates that the Office of the Pardon Attorney had ample time to review, and did collectively review, the substance of all the materials Mitchell submitted before completing its investigation, assembling a thorough appendix of all submitted and researched materials, and providing its recommendation to the President, *see* 28 C.F.R. § 1.6 and 1.10. Decl. of Kira Gillespie at ¶ 4-5.

Because Mitchell has received from the defendants all the process he has requested, his complaint is moot. *See, e.g.*, *New York State Rifle & Pistol Assn., Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1526 (2020) (official action—enactment of amendments to challenged gun ordinance—that afforded "the precise relief that petitioners requested in the prayer for relief in their complaint" mooted action for declaratory and injunctive relief); *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (property owners' § 1983 action seeking determination Illinois law did not provide sufficiently speedy opportunity to contest lawfulness of warrantless seizures of cars or cash suspected of facilitating drug crime mooted when state returned all cars it seized and plaintiffs forfeited relevant cash or accepted as final the state's return of some of it). Mitchell cannot bear his insurmountable burden to show likely success on the merits where his substantive claims are moot. This Court should deny his motion.

2.   <u>Mitchell Cannot Show a Violation of His Due Process or Eighth Amendment Rights</u>

Mitchell describes the crux of the relief he seeks as follows: "[I]t is critical that Mitchell's clemency petition make it to the ultimate decision-maker—the President." Dkt. 1¶63.  But given the declaration of Ms. Gillespie and government counsel's representations during the meet-and-confer yesterday, Dkt. 1¶32, Mitchell must necessarily be seeking more relief to have persisted in his lawsuit.  To the extent he requests a decision from the President, or seeks this Court to compel one, he necessarily fails to show he is legally entitled to that relief.

Clemency is an exclusively executive function, committed to the sole discretion of the President of the United States.  U.S. Const. art. II, § 2, cl. 1; *see Harbison*, 556 U.S. at 187 ("Federal clemency is exclusively executive: Only the President has the power to grant clemency for offenses under federal law.").  The President has the power to grant, deny, or take no action on a request for clemency; this Court cannot require the President to issue some sort of public "decision" on whether or not to grant clemency in order for a stay to lift so that a lawful sentence may be carried out.  If the President needs additional time to process Mitchell's application, then he can delay the execution for that purpose, but a court has no power to regulate such "exclusively executive" functions.  *See, e.g.*, *Newdow v. Roberts*, 603 F.3d 1002, 1012 (D.C. Cir. 2010) ("A court — whether via injunctive or declaratory relief — does not sit in judgment of a President's executive decisions.").  If the President needs additional time to process Mitchell's application, then he can delay the execution for that purpose, but a court has no power to regulate such "exclusively executive" functions.

Even if it were within this Court's authority to issue the injunctive relief Mitchell necessarily seeks, the cases he cites are inapposite.  He relies primarily on *Woodard*, 523 U.S. 272, but that case arose in the context of state clemency proceedings.  *See* 523 U.S. at 275.  Unlike state

clemency power, the President's pardon authority is expressly granted by the Constitution itself. It is thus far from evident that any due-process constraints applicable to the States would extend to the President himself.  And the same goes for the Department of Justice in formulating its recommendation to the President concerning his exercise of core Article II authority.  *See, e.g.*, *Ass'n of American Physicians & Surgeons v. Clinton*, 997 F.2d 898, 909 (D.C. Cir. 1993) ("Article II not only gives the President the ability to consult with his advisers confidentially, but also, as a corollary, it gives him the flexibility to organize his advisers and seek advice from them as he wishes.").  Moreover, the pardon regulations upon which Mitchell relies explicitly disclaim conferring any rights on the inmate seeking clemency.[2]  *See* 28 C.F.R. 1.11.

And even if it does, *Woodard* does not give Mitchell a right to any more due process than he already received here.  In *Woodard*, the plurality opinion concluded that the Due Process Clause provides no constitutional safeguards as to clemency proceedings.  Specifically, the plurality rejected the notion that a state's "clemency procedures . . . violate due process" simply because they lacked the various procedures the inmate desired.  523 U.S. at 282.  As the plurality explained, where "the ultimate decisionmaker, the Governor, retains broad discretion[,] . . . the Governor's executive discretion need not be fettered by the types of procedural protections sought by respondent. There is thus no substantive expectation of clemency. A denial of clemency merely means that the inmate must serve the sentence originally imposed."  *Id*. (citations omitted). The plurality continued, "[p]rocedures mandated under the Due Process Clause should be consistent with the nature of the governmental power being invoked. Here, the executive's clemency

---

[2] Mitchell's claim or suggestion that the "frequently asked questions" section of the Office of the Pardon Attorney's website conveys rights or expectations on him is unsustainable in light of 28 C.F.R. § 1.11.  Dkt. 1¶66.

authority would cease to be a matter of grace committed to the executive authority if it were constrained by the sort of procedural requirements that respondent urges." *Id*. at 285.

Justice O'Connor's concurrence, which was joined by Justices Breyer, Ginsburg and Souter, concluded that some minimal procedural safeguards apply to clemency proceedings. Thus, the Court's narrowest holding is that some minimal level of procedural due process applies to clemency proceedings. *See Marks v. United States*, 430 U.S. 188 (1977); *Duval v. Keating*, 162 F.3d 1058, 1061 (10th Cir. 1998).

As the Eleventh Circuit has explained, the "key word" in Justice O'Connor's concurrence was "'minimal.'" *Gissendaner v. Comm'r, Ga. Dep't of Corrections*, 794 F.3d 1327, 1333 (11th Cir. 2015) (quoting *Woodard*, 523 U.S. at 288-90). The Eleventh Circuit noted that "the only circumstances that Justice O'Connor's opinion identifies in which due process would be offended are truly outrageous ones, such as (1) 'a scheme whereby a state official flipped a coin to determine whether to grant clemency,' or (2) 'a case where the State arbitrarily denied a prisoner any access to its clemency process.'" *Id*. (quoting *Woodard*, 523 U.S. at 289).

Mitchell cannot show that the government "arbitrarily denied [him] any access to its clemency process," nor that the federal pardon scheme is in any way analogous to a coin flip. As Mitchell himself acknowledges, explicit regulations provide for the actions of DOJ personnel within the federal pardon scheme. *See* 28 C.F.R. §§ 1.1-1.10. Ms. Gillespie's declaration demonstrates that the Office of the Pardon attorney complied with those regulations and DOJ has made its recommendation to the President. Gillespie Decl. at ¶5. Mitchell fails to identify any specific manner in which DOJ would have acted differently on a longer timeline, and none exists. Fatal to his claim, he also fails to identify any way in which *he* would have acted differently on a longer timeframe.

Mitchell's Eighth Amendment claim likewise finds no support in the Constitution or law. The Eighth Amendment provides, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Mitchell fails to explain how his procedural pardon claims fit within the context of "cruel and unusual punishments," and the weight of authority refutes any such idea. As the Eleventh Circuit explained in rejecting a similar Eighth Amendment claim, "the concern derived from the Eighth Amendment regarding capital cases focuses on the judicial processes of trial and appellate review, not the discretionary state processes (i.e., executive clemency) succeeding them." *Bundy v. Dugger*, 850 F.2d 1402, 1424 (11th Cir. 1988) (citation omitted).

Separately, Mitchell asserts that a prohibition on clemency would violate the Eighth Amendment. Dkt 1¶64 (citing *Gregg v. Georgia*, 428 U.S. 153, 189, 199 n.50 (1976); *Bundy*, 850 F.2d at 1424.) However, there is no such prohibition on federal clemency. To the contrary, as Mitchell acknowledges and Ms. Gillespie's declaration demonstrates, the Office of the Pardon Attorney received both written and oral submissions from Mitchell, considered them, completed its investigation, and made its recommendation to the President. *See Bundy*, 850 F.2d at 1424 (rejecting Eighth Amendment claim as "without merit" because "this is not the situation where a state prohibits executive clemency") (*citing Gregg*, 428 U.S. at 199 n.50); *see also Sepulvado v. Louisiana Bd. of Pardons and Parole*, 171 F. App'x 470, 473 (5th Cir. 2006) (noting failure to "guarantee a clemency hearing" does not violate Eighth Amendment). Thus, even assuming Mitchell's complaint adequately pleads an Eighth Amendment violation—which it does not—he fails to support any alleged violation with facts showing a likelihood of success on the merits.

Given his failure to show a likelihood of success on the merits, his request for injunctive relief must be denied.

III.    THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST WEIGH
        AGAINST A STAY

While Mitchell's claims to merits success are unsupported and speculative, the interests of

the United States, the public, the victims, and their family members are not.  In claiming that the

United States lacks a strong interest in enforcing its judgment after 19 years of litigation—in which

it has uniformly prevailed—Mitchell asks this Court to ignore binding precedent.  "Equity must

take into consideration the State's strong interest in proceeding with its judgment."  *Gomez*, 503

U.S. at 654 (emphasis added); *see also Hill*, 547 U.S. at 584 (recognizing the government's "strong

interest in enforcing its criminal judgments").

The fact that Mitchell's conviction and sentence have been repeatedly upheld, in both direct

and collateral appeals, provides the United States with a strong interest in finality.  *See Calderon

v. Thompson*, 523 U.S. 538, 556 (1998) ("A State's interests in finality are compelling when a

federal court of appeals issues a mandate denying federal habeas relief.").  Indeed, Mitchell's own

case law makes clear that stays of execution should be denied in circumstances like this.  *See* Dkt.

1-11 at 15-16.

Mitchell cites Justice Powell's concurrence in *Wainwright v. Booker*, 473 U.S. 935, 937

(1985), which was a concurrence in vacating a stay of execution.  That concurrence, recognizing

the state's strong interest in carrying out the sentence "for a particularly brutal murder" after more

than a decade of repeated appeals, seems tailor-made for Mitchell's own case.  *Id*.  "None of the

many opinions that have been filed in this protracted litigation suggests that respondent is innocent

or that his conviction raises any serious constitutional issues," and "[f]or our system of justice to

function effectively, litigation in cases such as this one must cease when there is no reasonable

ground for questioning either the guilt of the defendant or the constitutional sufficiency of the procedures employed to convict and sentence him." *Id*.

Finality is not just a strong interest of the United States as a litigant. "Finality is essential to both the retributive and the deterrent functions of criminal law," and "[w]ithout finality, the criminal law is deprived of much of its deterrent effect." *Calderon*, 523 U.S. at 554 (quotation omitted). "Only with an assurance of real finality can the State execute its moral judgment in a case" and vindicate the public's "'powerful and legitimate interest in punishing the guilty.'" *Id*. at 556 (quoting *Herrera v. Collins*, 506 U.S. 390, 421 (1993) (O'Connor, J., concurring)). Mitchell's crimes were heinous, cruel, and depraved. The public has a strong interest in executing the moral judgment and just punishment of a penalty imposed in 2003 and repeatedly affirmed since.

And the "balance" of the equities tilts decidedly in the government's favor. Nearly two decades after his crime, Mitchell seeks for the fifth time in two weeks to stay his execution for an indefinite period by advancing a novel and groundless claim that he has sat on for at least a month, the Ninth Circuit has already rejected, and that in the end seeks relief he has already received. The severe logistical costs of constantly re-mobilizing for a federal execution every time an inmate brings a serial stay motion—costs Mitchell minimizes, but does not deny, *see* Dkt. 1-11 at 16-17—would alone justify denial of a stay.

But this isn't just a question of logistics which, the day before his execution, are already firmly in place. Weighing against Mitchell is the "'powerful and legitimate interest in punishing" him for his heinous crime—killing a grandmother and a child—an interest "shared by the State and crime victims alike." *Calderon*, 523 U.S. at 555-56 (quotation omitted). As in any capital case, relatives of the victims have a range of opinions, but numerous members of the victims'

family here have long supported a capital sentence for what Mitchell did to their loved ones.  *See* CR-01-1062-PCT-DGC, Resp., Dkts. 610, 611 (D. Ariz. Aug. 10, 2020 (citing, *e.g.*, PSR & Attach., Statements of K.H. ("I [am] requesting that the defendant Lezmond Mitchell pay for what he has done to my mother and niece and how he has hurt our family/families. I'm for the death penalty. He knew right from wrong."), B.H. ("He had no respect for life and no remorse for what he did to my grandma and cousin. I want the death penalty for him."), D.H. ("I want Justice which is the death penalty.").)  Indeed, Jane Doe's father and representatives of other victim family member representatives are already on aircraft traveling to Terre Haute to observe Mitchell's execution, in an effort to attain a measure of peace and finality for crimes committed long ago.

Equity would abhor the notion that Mitchell could, at this late hour, stop his execution once again in order to dictate the minute details of his death—something he denied Alyce Slim and Jane Doe when he tortured them to death.  The United States, the public, the victims, and their families "deserve better" than further delays of this lawful, repeatedly-affirmed sentence.  *Bucklew*, 139 S. Ct. at 1134.

Dated:  August 25, 2020

Respectfully submitted,

MICHAEL BAILEY
United States Attorney
District of Arizona

*/s/ Krissa M. Lanham*
KRISSA M. LANHAM
Assistant United States Attorney

*Attorneys for Defendants*

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN
Civil Chief, U.S. Attorney's Office

*/s/ Alan Burch*
ALAN BURCH, D.C. Bar #470655
Assistant United States Attorney
U.S. Attorney's Office
for the District of Columbia
Washington, D.C. 20530
202-252-2550
alan.burch@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2020, I caused a true and correct copy of foregoing to be served on all counsel of record listed below via the Court's CM/ECF system.

/s/ _Alan Burch_
Assistant United States Attorney