UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEZMOND CHARLES MITCHELL,    *Plaintiff*  v.  WILLIAM P. BARR, et al.,    *Defendants*. | Case No. 1:20-cv-02331-RCL |

## MEMORANDUM OPINION

On August 25, 2020, plaintiff Lezmond Charles Mitchell filed an application with this Court for a Temporary Restraining Order and Preliminary Injunction against Defendants William P. Barr, et al. ("Defendants") seeking to stay his execution set for August 26, 2020. ECF No. 3. For the reasons set forth below, the Court will deny Mr. Mitchell's request.

## BACKGROUND

In 2001, Mr. Mitchell was hitchhiking with an acquaintance. *United States v. Mitchell (Mitchell I)*, 502 F.3d 931, 942 (9th Cir. 2007). When Alyce Slim, a sixty-three-year-old woman driving with her nine-year-old granddaughter encountered the two men, Ms. Slim picked them up. *Id.* at 943. Once Ms. Slim stopped to let the men out, they stabbed her thirty-three times. *Id.* They then put her body in the backseat next to her granddaughter, who was still alive. *Id.* After driving more than thirty miles into the mountains, they ordered the granddaughter to get out of the car. *Id.* They slit her throat twice and bludgeoned her head until she died. *Id.* Mr. Mitchell and his accomplice then dismembered Ms. Slim and her granddaughter with an axe and buried their body parts in the woods. *Id.*

When DNA evidence led criminal investigators to Mr. Mitchell, he admitted that he was present when "things happened" to Ms. Slim and her granddaughter. 502 F.3d at 944. He also agreed to help the investigators find the bodies. *Id.*

A federal jury found Mr. Mitchell guilty of murder, felony murder, robbery, carjacking resulting in death, and kidnapping and he was sentenced to death. 502 F.3d at 946. On appeal, the Ninth Circuit affirmed his conviction and sentence. *Id.* at 942. And it later affirmed the denial of his collateral attack. *Mitchell v. United States (Mitchell II)*, 790 F.3d 881, 883 (9th Cir. 2015).

At the time Mr. Mitchell was sentenced, the Government was not carrying out executions for federal prisoners sentenced to death. But in late July 2019, for the first time in over fifteen years, the Department of Justice ("DOJ") announced its plans to execute five federal inmates. *See* Press Release, Dep't of Justice, *Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse* (July 25, 2019), https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment -after-nearly-two-decade-lapse.

Mr. Mitchell was one of those inmates. *Id.* On July 25, 2019, the Warden for the United States Penitentiary at Terre Haute—where Mr. Mitchell is incarcerated—notified Mr. Mitchell that his execution had been scheduled for December 11, 2019. ECF No. 1 at 6. Shortly thereafter, Mr. Mitchell timely filed a formal petition for commutation of his death sentence with the Office of the Pardon Attorney ("OPA"). ECF No. 3-5. In his petition, Mr. Mitchell argues that as a Navajo man, his execution would be an affront to the sovereignty of the Navajo Nation. *Id.* He also claims that his sentence is disproportionate to his co-defendant's and that he should be spared because he has accepted responsibility for his actions. *Id*. The OPA granted Mr. Mitchell's request for a hearing at which he could give a presentation in support of his clemency

petition and scheduled the hearing for October 22, 2019. ECF No. 1 at 6-7; *see* 28 C.F.R. § 1.10(c).

In the meantime, on October 4, 2019, the Ninth Circuit stayed Mr. Mitchell's execution pending the resolution of his appeal before it. ECF No. 1 at 7. On April 30, 2020, the Ninth Circuit rejected Mr. Mitchell's request for relief under Federal Rule of Civil Procedure 60(b)(6). *Mitchell v. United States (Mitchell III)*, 958 F.3d 775, 779 (9th Cir. 2020). Mr. Mitchell's petition for rehearing or rehearing en banc was denied. ECF No. 1 at 7. So too was his motion to stay the mandate to allow him to petition to the United States Supreme Court. *Id.* On July 20, 2020, Mr. Mitchell petitioned for rehearing or rehearing en banc of the denial of his motion to stay the mandate. *Id*. That request was eventually denied as well. *Id.* at 9.

On July 29, 2020, Mr. Mitchell received a notice informing him that his execution had been rescheduled for August 26, 2020. ECF No. 1 at 8; *see* 28 C.F.R. § 26.4(a). The OPA held a hearing on Mr. Mitchell's clemency petition on August 11, 2020. *Id*. The OPA reviewed all the materials submitted and, at some point after the hearing, made its recommendation to the President. ECF No. 7-1 at 3; *see* 28 C.F.R. § 1.6(c). As of today, the President has not yet decided whether to grant Mr. Mitchell clemency. ECF No. 1 at 10.

The day before his execution was scheduled to take place, Mr. Mitchell simultaneously filed a Complaint and Motion for a Temporary Restraining Order and Preliminary Injunction with this Court. ECF Nos. 1, 1-11. In his Motion, he seeks to enjoin the Department of Justice, the Federal Bureau of Prisons, the Office of the Pardon Attorney, and a handful of officials from each agency, from carrying out his execution on August 26, 2020 so that the President can decide whether to grant him clemency. ECF No. 3 at 1-2. The Government responded. ECF No. 7.

**LEGAL STANDARD**

Injunctive relief is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The movant bears the burden of demonstrating that: (1) it has a substantial likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) the public interest would be furthered by the injunction. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The Court considers the same factors in deciding whether to issue a TRO as it does when deciding whether to issue a preliminary injunction. *Baker DC, LLC v. National Labor Relations Board*, 102 F. Supp. 3d 194, 198-99 (D.D.C. 2015).

**DISCUSSION**

Mr. Mitchell raises three related constitutional claims. First, he argues that by scheduling his execution with only 28 days' notice, Defendants have hindered the President's ability to review Mr. Mitchell's clemency petition and thus has deprived him of due process. Second, Mr. Mitchell claims that by stripping him of his most basic procedural safeguards, Defendants have violated his Eighth Amendment protection against the arbitrary infliction of cruel and unusual punishment. Finally, he argues that Defendants have "create[d] an arbitrary system of clemency evaluation" in violation of the Equal Protection Clause. ECF No. 1 at 28.

This Court must deny his petition, as none of these claims is likely to succeed on the merits.

**A. Due Process**

At bottom, Mr. Mitchell's first claim is that he has a protected liberty interest in a final decision from the President on his pending clemency petition before his execution. In support, he

4

relies on two provisions of the regulations governing executive clemency ("the Regulations"). *See* 28 C.F.R. § 1.1 *et seq.* First, he points to 28 C.F.R. § 1.10(e), which provides that "[o]nly one request for a commutation of a death sentence will be processed to completion, absent a clear showing of the clemency proceeding." He highlights the "to completion" language to argue that he has a protected right in a final decision from the President. Mr. Mitchell also points to 28 C.F.R. § 1.8(b), which treats the President's failure to grant or deny clemency in non-capital cases within thirty days of the Attorney General's recommendation to deny clemency as an effective denial. He argues that the exception for capital cases means that, in capital cases, the President must take action. ECF No. 1 at 13.

These Regulations do not give Mr. Mitchell a protected liberty interest in a decision on his clemency petition from the President. In fact, the Regulations explicitly say that they "create no enforceable rights in persons applying for executive clemency." 28 C.F.R. § 1.11. This should come as no surprise, as the U.S. Constitution provides that the President "shall have power to grant reprieves" for federal crimes. U.S. Const. Art. II, § 2. Included within this discretion, of course, is the decision not to take any action. It is not within the province of this Court to order the President to make a decision on Mr. Mitchell's clemency petition.

Mr. Mitchell's reliance on *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998) to argue that he has a protected liberty interest is misplaced. In *Woodard*, a state prisoner sentenced to death challenged Ohio's clemency proceedings as violating the Due Process Clause of the Fourteenth Amendment. 523 U.S. at 277. The Supreme Court disagreed. *Id.* at 288. It held that Ohio's clemency proceedings did not violate due process, as they did "no more than confirm" that the clemency power is committed to the "authority of the executive." *Id.* at 276.

In Justice O'Connor's concurrence in part and concurrence in the judgment—joined by Justices Souter, Ginsburg, and Breyer—she wrote that "some *minimal* procedural safeguards apply to clemency proceedings." 523 U.S. at 289. For example, she explained, judicial intervention may be warranted if a state official flipped a coin to decide whether to grant clemency or if a state arbitrarily denied a prisoner access to its clemency proceedings. *Id.*

Neither of these circumstances are present here. Mr. Mitchell does not challenge the President's ultimate decision on his clemency petition.[1] Nor does he argue that the Defendants arbitrarily denied him access to executive clemency proceedings. To the contrary, he completed the full clemency process with the OPA: after he submitted his materials to the OPA and had a hearing, the OPA considered his materials and sent its recommendation to the President. ECF No. 7-1 at 3. Similarly, Justice O'Connor ultimately concluded that Ohio's clemency proceedings did not violate due process because the prisoner received a notice of his hearing and an opportunity to participate in an interview. 532 U.S. at 289.

B. **Eighth Amendment**

Next, Mr. Mitchell claims that by stripping him of his most basic procedural safeguards, Defendants have violated his Eighth Amendment guarantee against the arbitrary infliction of cruel and unusual punishment. But as explained above, Mr. Mitchell has not demonstrated a likelihood of success on the merits of his Due Process Claim. Plus, before this Court can decide whether there was an *arbitrary* infliction of cruel and unusual punishment, there must be cruel and unusual punishment in the first place. Mr. Mitchell fails to argue that his execution amounts to cruel and unusual punishment.

---

[1] Even if Mr. Mitchell were challenging the President's ultimate decision to deny his clemency petition, Justice O'Connor's opinion would be of little use to him, as her hypotheticals involved *state* officials, not the President of the United States. *See* 523 U.S. at 298.

6

### C. Equal Protection

Finally, Mr. Mitchell claims that by scheduling his execution on a "shortened timeline," and scheduling other federal inmates' executions with enough time for the President to decide their clemency requests, Defendants have deprived him of his right to have his request processed to completion. ECF No. 3 at 15. Yet as explained above, no federal inmates have a right to the President's final decision on their clemency request. Thus, Mr. Mitchell is unlikely to succeed on the merits of his claim that Defendants violated the Equal Protection Clause of the Fifth Amendment.

\* \* \* \* \*

In sum, none of Mr. Mitchell's claims is likely to succeed on the merits. And though the standard for likelihood of success on the merits can be lowered in the event of a strong showing of irreparable harm, this "sliding scale" approach cannot eviscerate the likelihood-of-success requirement altogether. *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009). Thus, because there is no likelihood of success on any of Mr. Mitchell's claims, we need not address the remaining three requirements for a TRO.[2]

---

[2] Defendants argue that because the OPA processed Mr. Mitchell's request and sent it to the President, Mr. Mitchell's claims are moot. ECF No. 7 at 17. The Court disagrees. Mr. Mitchell argues that the Defendants have "intentionally stymie[d] the clemency process" by scheduling his execution on short notice. ECF No. 3 at 11. Though the OPA already sent its recommendation to the President, the Court is not aware of any rule preventing Defendants from delaying Mr. Mitchell's execution to give the President more time to make a decision. Nevertheless, the Court will deny Mr. Mitchell's petition because he has failed to show a likelihood of success on the merits.

## CONCLUSION

Based on the foregoing, the Court will **DENY** plaintiff Lezmond Charles Mitchell's application for a Temporary Restraining Order and Preliminary Injunction.

A separate Order accompanies this Memorandum Opinion.

Date: <u>August 26, 2020</u>                                              <u>s/ Hon. Royce C. Lamberth</u>
                                                                                                 United States District Court Judge